# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## *v.* ASSOCIATED DRY GOODS CORP.

No. 79–1068.   Argued November 3, 1980—Decided January 26, 1981

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, and MARSHALL, JJ., joined. BLACKMUN, J., filed an opinion concurring in part and dissenting in part, *post*, p. 604. STEVENS, J., filed a dissenting opinion, *post*, p. 606. POWELL, J., took no part in the decision of the case. REHNQUIST, J., took no part in the consideration or decision of the case.

*Barry Sullivan* argued the cause for petitioner. With him on the briefs were *Solicitor General McCree, Deputy Solicitor General Wallace, Leroy D. Clark, Joseph T. Eddins, Lutz Alexander Prager,* and *Vella M. Fink.*

*Roger S. Kaplan* argued the cause for respondent. With him on the brief were *Robert Lewis, Joel L. Finger,* and *Thomas C. Greble.**

*Briefs of *amici curiae* urging affirmance were filed by *Leonard Rovins* and *Alan D. Gallay* for the American Retail Federation; and by *Robert E. Williams* and *Douglas S. McDowell* for the Equal Employment Advisory Council.

JUSTICE STEWART delivered the opinion of the Court.

Title VII of the Civil Rights Act of 1964 limits the authority of the Equal Employment Opportunity Commission to make public disclosure of information it has obtained in investigating and attempting to resolve a claim of employment discrimination.[1] We granted certiorari in this case to consider whether the Court of Appeals for the Fourth Circuit was correct in holding that a prelitigation disclosure of information in a Commission file to the employee who filed the Title VII claim is a "public" disclosure within the meaning of the statutory restrictions. 445 U. S. 926.[2]

---

[1] Section 706 (b) of Title VII, 78 Stat. 259, as amended, 42 U. S. C. § 2000e–5 (b), provides in relevant part:

"Charges shall be made in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. . . ."

Section 709 (e) of Title VII, 78 Stat. 264, 42 U. S. C. § 2000e–8 (e), provides:

"It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this title involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $1,000, or imprisoned not more than one year."

[2] The decision of the Court of Appeals in this case that the Commission lacks the authority to make such a disclosure, *EEOC* v. *Joseph Horne Co.*, 607 F. 2d 1075 (CA4), conflicts with that of the Court of Appeals for the Fifth Circuit in *H. Kessler & Co.* v. *EEOC*, 472 F. 2d 1147. The

## I

This case arose when the Commission sought evidence with respect to discrimination charges filed against the Joseph Horne Co., a division of the respondent, Associated Dry Goods Corp. Horne operates retail department stores in Pennsylvania. Between 1971 and 1973, seven Horne employees filed employment discrimination charges with the Commission, six alleging sex discrimination and one alleging racial discrimination. The Commission began its investigation by requesting Horne to provide the employment records of the complainants, and statistics, documents, and other information relating to Horne's general personnel practices. Horne refused to provide the information unless the Commission agreed beforehand not to disclose any of the requested material to the charging parties. The Commission refused to give this assurance, explaining its practice of making limited disclosure to a charging party of information in his and other files when he needs that information in connection with a potential lawsuit.[3] When Horne continued to refuse

---

Courts of Appeals for the Seventh and District of Columbia Circuits have construed the "public" disclosure provisions of the statute in virtually the same way as did the Court of Appeals for the Fourth Circuit in the present case, though in the somewhat different context of the Commission's disclosure to individual charging parties of materials emerging from a systemwide investigation of an employer's practices after the Commission itself has brought a charge. *Burlington Northern, Inc.* v. *EEOC*, 582 F. 2d 1097 (CA7); *Sears, Roebuck & Co.* v. *EEOC*, 189 U. S. App. D. C. 163, 581 F. 2d 941. Since the Commission itself brought no charge in this case, the question of how the disclosure provisions apply in that context is not before the Court.

[3] The Commission's general policy on disclosure is set out in 29 CFR § 1601.22 (1979):

"Neither a charge, nor information obtained pursuant to section 709 (a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to section 709 (c) and (d) of Title VII, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving

to provide the information without an assurance of absolute secrecy, the Commission subpoenaed the material. After the Commission rejected Horne's petition for revocation of the agency subpoena, the respondent filed this suit, asking the District Court to declare that the Commission's limited disclosure practices violated Title VII, and to enjoin the Commission from enforcing the subpoena.[4]

The District Court, concluding that the Commission's disclosure of confidential information to charging parties upsets Title VII's scheme of negotiation and settlement, held that the regulations and the provisions in the Compliance Manual covering special disclosure to charging parties violate Title VII. Accordingly, the court enforced the subpoena only on the condition that the Commission treat charging parties as members of the "public" to whom it cannot disclose any information in its files. 454 F. Supp. 387 (ED Va.). The

such charge or information. This provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief. This provision also does not apply to such earlier disclosures to representatives of interested Federal, State, and local authorities as may be appropriate or necessary to the carrying out of the Commission's function under Title VII, nor to the publication of data derived from such information in a form which does not reveal the identity of charging parties, respondents, or persons supplying the information."

The Commission also has created very specific "special disclosure" rules governing the form and scope of disclosure to those persons whom the Commission treats as being separate from the "public" to whom the statute forbids any disclosure. 29 CFR § 1610.17 (d) (1979); EEOC Compliance Manual § 83 et seq.

[4] The complaint also alleged that the EEOC disclosure rules violate the Administrative Procedure Act, 5 U. S. C. §§ 551, 553, the Trade Secrets Act, 18 U. S. C. § 1905, and the Freedom of Information Act, 5 U. S. C. § 552. In addition, it alleged that the rules were substantive, rather than procedural, and therefore exceeded the Commission's statutory authority to issue rules of the latter type only. See 42 U. S. C. § 2000e–12. Neither the District Court nor the Court of Appeals addressed any of these allegations, and the issues they raise are not now before us.

Court of Appeals affirmed the District Court's judgment. *EEOC* v. *Joseph Horne Co.,* 607 F. 2d 1075.

## II

In enacting Title VII, Congress combined administrative and judicial means of eliminating employment discrimination. A person claiming to be the victim of discrimination must first file a charge with the Commission. The Commission must then serve notice of the charge on the employer, and begin an investigation to determine whether there is reasonable cause to believe the charge is true. 42 U. S. C. § 2000e–5 (b). If it finds no such reasonable cause, the Commission must dismiss the charge. *Ibid.* If it does find reasonable cause, it must try to eliminate the alleged discriminatory practice "by informal methods of conference, conciliation, and persuasion." *Ibid.*[5] If its attempts at conciliation fail, the Commission may bring a civil action against the employer. § 2000e–5 (f)(1). But Title VII also makes private lawsuits by aggrieved employees an important part of its means of enforcement. If the Commission dismisses the charge, the employee may immediately file a private action. *Ibid.* And regardless of whether the Commission finds reasonable cause, the employee may bring an action 180 days after filing the charge if by that time the Commission has not filed its own lawsuit. *Ibid.*[6]

---

[5] In most cases, the Commission actually begins its attempt to achieve a negotiated settlement before it makes a reasonable-cause determination. 29 CFR § 1601.20 (1979); EEOC Compliance Manual § 15. If it does achieve an early settlement, the agreement states that the Commission has made no judgment on the merits of the claim. *Ibid.* To investigate a charge as quickly as possible and to improve the chances of an early informal resolution, the Commission holds a factfinding conference well before it makes a reasonable-cause decision, with each party presenting its version of the facts. 29 CFR § 1601.15 (c) (1979).

[6] Under Commission regulations, the employee may obtain a right-to-sue letter upon request once 180 days have passed from the filing of the

Title VII gives the Commission two formal means of obtaining information when it investigates a charge: The Commission may examine and copy evidence in the possession of the respondent employer, § 2000e–8 (a), and subpoena evidence and documents, § 2000e–9. Congress imposed on the Commission a duty to maintain this information in confidence. Section 706 (b) of Title VII directs that "[c]harges shall not be made public by the Commission." [7] If the Commission attempts informally to resolve a charge for which it has found reasonable cause, it cannot make "public" anything said or done in the course of the negotiations between the Commission and the parties; any Commission employee violating this prohibition faces criminal penalties. *Ibid.* Section 709 (e) of the statute supplements these prohibitions by making it a misdemeanor for any officer or employee of the Commission "to make public in any manner whatever any information" the Commission obtains through its investigative powers before the institution of any proceeding involving this information.[8]

Title VII nowhere defines "public." In its regulation governing disclosure, the Commission has construed the statute's prohibition of "public" release of information to permit prelitigation disclosure of charges and of investigative information to the parties where such disclosure "is deemed necessary for securing appropriate relief." 29 CFR § 1601.22 (1979). Specifically, the Commission has also created special disclosure rules permitting release of information in its files to charging parties or their attorneys, aggrieved persons in whose behalf charges have been filed and the persons or organizations who

---

charge, 29 CFR § 1601.28 (a) (1) (1979), but the Commission may issue a right-to-sue letter earlier if it finds that it cannot complete its consideration of a charge within 180 days of filing, § 1601.28 (a) (2). The statute gives the employee 90 days from the Commission's notice of right to sue to file a private lawsuit. 42 U. S. C. § 2000e–5 (f) (1).

[7] See n. 1, *supra.*

[8] See n. 1, *supra.*

have filed the charges in their behalf, and respondents and their attorneys, so long as the request for the information is made in connection with contemplated litigation.[9] Though normally a person can see information in the file only for the case in which he is directly involved, the Commission sometimes allows a prospective litigant to see information in files of cases brought by other employees against the same employer where that information is relevant and material to the litigant's case. EEOC Compliance Manual § 83.7 (c).[10] Before disclosing any information, however, the Commission expunges the names, identifying characteristics, and statements of any witnesses who have been promised anonymity, as well as the names of any other respondents.[11] Moreover, any person requesting confidential information must execute a written agreement not to disclose the information to any other

---

[9] A charging party, however, cannot obtain information under these rules until his right to sue has attached, unless he can demonstrate a compelling need for earlier disclosure. EEOC Compliance Manual § 83.3 (a).

[10] The Commission defines "relevant and material" as follows:

"Information in other case files is relevant or material when other case files contain charges, investigations or determinations involving the same basis (e. g., sex, religion, national origin, race) with limited exceptions such as when the private litigant's case alleged discrimination in promotion against females and the other case file involved a male's claim that he was not hired because of respondent's policy of not hiring long haired males. Other case files may be relevant or material if they involve a different basis only when the treatment afforded one protected class is probative of treatment afforded the private litigant's class (e. g., systemic discrimination against Spanish Surnamed Americans is often probative as to treatment accorded Blacks and vice versa)." EEOC Compliance Manual § 83.7 (c) (2).

However, whenever the Commission discloses to a charging party information from other case files, it does not reveal the identity of the other employees who brought charges against the employer. § 83.7 (c) (4).

[11] The Commission also expunges any records of or statements obtained in its informal settlement negotiations, except for information which the Commission can otherwise obtain under its statutory power to copy or subpoena evidence. See 42 U. S. C. §§ 2000e–8 (a), 2000e–9.

person, except as part of the normal course of litigation after a suit is filed.[12]

## III

For the reasons that follow, we have concluded that Congress did not include charging parties within the "public" to whom disclosure of confidential information is illegal under the provisions of Title VII here at issue. Section 706 (b) states that "[c]harges shall not be made public." 42 U. S. C. § 2000e–5 (b). The charge, of course, cannot be concealed from the charging party. Nor can it be concealed from the respondent, since the statute also expressly requires the Commission to serve notice of the charge upon the respondent within 10 days of its filing. *Ibid.* Thus, the "public" to whom the statute forbids disclosure of charges cannot logically include the parties to the agency proceeding.[13] And we must infer that Congress intended the same distinction when it used the word "public" in § 709 (e), 42 U. S. C. § 2000e–8 (e). The two statutory provisions treat essentially the same subject, and, absent any congressional indication to the contrary, we must assume that "public" means the same thing in the two sections.[14]

The very limited legislative history of the disclosure provisions supports this reading. The bill passed by the House contained no restrictions on public disclosure. See H. R.

---

[12] "Information in case files may be disclosed only on the condition that the person requesting disclosure agree in writing not to make the information obtained public except in the normal course of a civil action or other proceeding instituted under Title VII." EEOC Compliance Manual § 83.3 (b).

[13] The statute also forbids public disclosure of any matters arising in informal conciliation "without the written consent of the persons concerned." § 2000–e (5) (b). This phrase suggests that the parties, the "persons" whose consent would most obviously be necessary, are not members of the "public" to whom disclosure is forbidden.

[14] The language in § 709 (e) forbidding disclosure "in any manner whatever," seems clearly to refer to the means of publication, and not to the persons to whom disclosure is forbidden.

Rep. No. 914, 88th Cong., 1st Sess., 13 (1963).[15] The disclosure provisions were made part of the substitute bill which Senators Dirksen and Humphrey introduced in the Senate, and which the House later passed without amendment. See 110 Cong. Rec. 12819 (1964). Senator Humphrey, the cosponsor of the bill, explained that the purpose of the disclosure provisions was to prevent wide or unauthorized dissemination of unproved charges, not limited disclosures necessary to carry out the Commission's functions: "[T]his is a ban on *publicizing* and not on such disclosure as is necessary to the carrying out of the Commission's duties under the statute. . . . The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but rather is aimed at the making available to *the general public* of unproven charges." *Id.*, at 12723 (emphasis added).[16] The parties to an agency proceeding are hardly

---

[15] The House bill, however, did incorporate by reference the provisions of § 10 of the Federal Trade Commission Act, 38 Stat. 723, as amended, 15 U. S. C. § 50, which prohibit FTC employees from making "public any information obtained from the Commission without its authority . . . ." See H. R. 7152, 88th Cong., 1st Sess., § 710 (a) (1963). Under FTC rules construing § 10, the ban on disclosure applies only to unauthorized release of information, and does not prevent disclosure to parties to FTC proceedings. 16 CFR §§ 1.41, 1.133, 1.134 (1964) (current version at 16 CFR §§ 3.36, 4.10 (c) (1980)). Thus, in passing the substitute bill without amendment, the House may well have assumed that the express disclosure provisions in the Senate bill gave the Commission powers of disclosure similar to those under the FTC Act.

[16] The other cosponsor of the Senate bill, Senator Dirksen, explained § 706 (b)'s prohibition of any "public" disclosure of matters revealed during informal conciliation attempts as follows: "The maximum results from the voluntary approach will be achieved if the investigation and conciliation are carried on in privacy. If voluntary compliance with this title is not achieved, the dispute will be fully exposed to public view when a court suit is filed." 110 Cong. Rec. 8193 (1964). Senator Dirksen's explanation strongly suggests that the parties are considered part of the private efforts at conciliation, not members of the general public to whom the dispute will be "fully exposed" after litigation begins.

members of the "general public," especially since, as common sense and the express language of § 706 (b) show, see *supra,* at 598, they always have available to them the charge—proved or unproved—in the case to which they are parties.[17]

This reading of the statute, moreover, is consistent with the coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII. See *supra,* at 595. First, limited disclosure to the parties can speed the Commission's required investigation: the Commission can more readily obtain information informally—rather

---

[17] The principle that courts should respect an agency's contemporaneous construction of its founding statute, *Power Reactor Co.* v. *Electricians,* 367 U. S. 396, 408, also supports this view of Title VII, since the Commission first issued its rule permitting disclosure to the charging party shortly after Congress created the EEOC in 1965. 30 Fed. Reg. 8407 (1965). Moreover, such a contemporaneous construction deserves special deference when it has remained consistent over a long period of time. See *Trafficante* v. *Metropolitan Life Ins. Co.,* 409 U. S. 205, 210. The Commission's current regulation permitting such disclosure, 29 CFR § 1601.22 (1979), reflects no significant change from the original regulation. The original regulation permitted disclosure to the charging party "as may be appropriate or necessary to the carrying out of the Commission's functions . . . ." 30 Fed. Reg. 8409 (1965). The regulation was changed in 1977 to allow disclosure to the charging party's attorney as well as to the party himself, and to rephrase the controlling condition for disclosure as "where such disclosure is deemed necessary for securing appropriate relief." 42 Fed. Reg. 42024 (1977) (codified at 29 CFR § 1601.22 (1979)). In the 15 years during which the Commission has consistently allowed limited disclosure to the charging party, Congress has never expressed its disapproval, and its silence in this regard suggests its consent to the Commission's practice. *United States* v. *Jackson,* 280 U. S. 183, 196–197. In 1972 Congress made major changes in Title VII, but the only change in the disclosure provisions was a very minor one in § 706 (b): Congress amended the provision requiring consent before disclosure of conciliation matters by replacing "consent of the parties" with "consent of the persons concerned." Section 706 (b) was also amended to permit charges to be filed "on behalf of" as well as by aggrieved parties, and the new phrase "persons concerned" was probably intended to conform to that change. See 118 Cong. Rec. 4941 (1972).

than through its formal powers under 42 U. S. C. § 2000e–9—if it can present the parties with specific facts for them to corroborate or rebut. Second, limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation: A party is far more likely to settle when he has enough information to be able to assess the strengths and weaknesses of his opponent's case as well as his own.[18]

The respondent argues vigorously that the disclosure of investigative information to charging parties may encourage many lawsuits that would not otherwise be filed, and thus contravene the congressional policy of relying on administrative resolution and settlement. But the effect of limited disclosure may be just the opposite. The employee has little to gain from filing a futile lawsuit, and indeed faces the possibility of an adverse fee award if the suit is frivolous.

---

[18] When the Commission issues its decision on whether there is probable cause to believe the charge is true, it explains the factual bases for its conclusion. EEOC Compliance Manual §40.7. A positive finding may thereby be a spur to settlement; a negative finding may deter the employee from filing a frivolous lawsuit. If the Commission were not allowed to disclose to the parties essential facts it obtained during its investigation, it would be able to announce no more than its bare conclusion on reasonable cause, and these important benefits of the reasonable-cause determination would be lost.

Moreover, a charging party who consents to a settlement negotiated by the Commission waives his right to file a civil action. 42 U. S. C. § 2000e–5 (f) (1); see *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355, 364. Of course, anyone who settles a case gives up the right to litigate it. But Title VII places employment discrimination claimants in an especially difficult position by forcing them to yield initial control of their potential lawsuits to the Commission, which, in reaching agreement with the employer, might have interests different from those of the employee. It seems unlikely that Congress would force a Title VII charging party, who would have difficulty resisting the opportunity to enter the agreement negotiated by the Commission, to waive his statutory right to litigate when he cannot know the essential facts obtained in the Commission's investigations.

*Christiansburg Garment Co. v. EEOC,* 434 U. S. 412, 421. Pointless litigation burdens both the parties and the federal courts, and it is in the interest of all concerned that the charging party have adequate information in assessing the feasibility of litigation. Under the respondent's view of the statute, however, the charging party would be able to obtain that information only after filing a lawsuit. See 42 U. S. C. § 2000e–8 (e). Thus, a charging party would have to file suit in a hopeless case in order to discover that the case·was hopeless.[19] The Commission's disclosure practice may therefore help fulfill the statutory goal of maximum possible reliance upon voluntary conciliation and administrative resolution of claims.

In any event, even if disclosure may encourage litigation in some instances, that result is not inconsistent with the ultimate purposes of Title VII.[20] The private right of action remains an important part of Title VII's scheme of enforcement, *Alexander* v. *Gardner-Denver Co.,* 415 U. S. 36, 45. Congress considered the charging party a "private attorney general," whose role in enforcing the ban on discrimination is parallel to that of the Commission itself. *Christiansburg Garment Co.* v. *EEOC, supra,* at 421.[21] The private litigant

---

[19] An impecunious employee would be unlikely to be able to conduct a thorough investigation of his own after he filed a charge, and therefore would be tempted to file a lawsuit so that he could request appointed counsel, 42 U. S. C. § 2000e–5 (f) (1), if the statute did not allow the Commission to give him essential investigative information before he filed suit.

[20] The filing of a private lawsuit may actually encourage settlement. See *Young* v. *International Telephone & Telegraph Co.,* 438 F. 2d 757, 764 (CA3).

[21] The legislative history of the 1972 amendments to Title VII reflects a strong reaffirmation of the importance of the private right of action in the Title VII enforcement scheme:

"The retention of the private right of action . . . is intended to make clear that an individual aggrieved by a violation of Title VII should not be forced to abandon the claim merely because of a decision by the Com-

could hardly play that role without access to information needed to assess the feasibility of litigation.

## IV

Nevertheless, though Congress allowed disclosure of investigative information in a charging party's file to that party himself, nothing in the statute or its legislative history reveals any intent to allow the Commission to reveal to that charging party information in the files of other charging parties who have brought claims against the same employer. See EEOC Compliance Manual § 83.7 (c).[22]  As noted earlier, the charging party cannot logically be a member of the "public" to whom disclosure is forbidden by § 706 (b) of Title VII, and, by extension, cannot be a member of the public under § 709 (e).  See *supra*, at 598.  The reason, however, is that the charging party is obviously aware of the charge he has filed, and so cannot belong to the public to which Congress referred when it directed that "[c]harges shall not be made public."  42 U. S. C. § 2000e–5 (b).

But there is no reason why the charging party should know the content of any other employee's charge, and he must be considered a member of the public with respect to charges filed by other people.  With respect to all files other than his own, he is a stranger.

The Commission notes that it often consolidates substantially similar charges for investigation, and in other instances draws upon information generated in an earlier investigation of the same employer.  The Commission therefore argues that because information in one party's file may be directly

mission or the Attorney General as the case may be, that there are insufficient grounds for the Government to file a complaint. . . .

"It is hoped that recourse to the private lawsuit will be the exception and not the rule. . . .  However, as the individual's rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief."  118 Cong. Rec. 7565 (1972) (Section-by-Section analysis).

[22] See n. 10, *supra*.

relevant to another party's charge, it would be burdensome for it to have to reproduce the generally relevant information for each file, and unfair to a charging party to deny him access to generally relevant information that, by chance of timing, appears first and fully in another party's file.

But the Commission's argument is merely one of administrative convenience, and such convenience cannot override the prohibitions in the statute. Statistics and other information about an employer's general practices may certainly be relevant to individual charges of discrimination, *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 804–805, but by including such information, in full or summary form, in each individual charging party's file, the Commission can fully comply with the statute while giving each party the information he needs to weigh the strength of his own case.

## V

The Court of Appeals erred, therefore, in holding that the respondent had a categorical right to refuse to comply with the EEOC subpoena unless the Commission assured it that the information supplied would be held in absolute secrecy. The respondent was entitled only to assurance that each employee filing a charge against Horne would see information in no file other than his or her own. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE POWELL took no part in the decision of this case. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

JUSTICE BLACKMUN, concurring in part and dissenting in part.

In my view, the proper standard for evaluating disclosures of information by the Equal Employment Opportunity Com-

mission (EEOC) was expressed by Senator Humphrey, the cosponsor of the bill that became Title VII. As the Court notes, *ante*, at 598–600, Senator Humphrey stated that the prohibitions against public disclosure in §§ 706 (b) and 709 (e) of Title VII, 42 U. S. C. §§ 2000e–5 (b) and 2000e–8 (e), do not forbid "such disclosure as is necessary to the carrying out of the Commission's duties under the statute." 110 Cong. Rec. 12723 (1964). I would adhere to this standard and require the Commission to justify any disclosure of its investigative files by demonstrating that the disclosure is "necessary to the carrying out of [its] duties."* Because the Commission must communicate charges to respondents, investigate the charges that have been filed, determine whether there is reasonable cause to believe that the charges are true, inform the parties of its determination, and attempt to settle charges, see § 706 (b), there undoubtedly are many occasions when it must disclose some of its information to the parties and to witnesses. The Court of Appeals erred, therefore, when it held that no disclosure to parties and witnesses is permitted before a suit is filed.

The Commission, however, has not pointed to any provision

---

*As the Court notes, the agency adopted precisely this standard as a contemporaneous construction of the statute. Its first disclosure rules, issued in 1965, authorized disclosure to the charging party "as may be appropriate or necessary to the carrying out of the Commission's function." 30 Fed. Reg. 8409 (1965). This regulation remained unchanged until 1977, when it was amended to state a broader standard, although the agency disclaimed an intent to do so. See 42 Fed. Reg. 42024 (1977). Disclosure to a charging party, his or her attorney, and certain others is now permitted when it "is deemed necessary for securing appropriate relief." 29 CFR § 1601.22 (1979). That this is a departure from the previous standard is clear, since the Commission retained the "necessary to the carrying out of the Commission's function" language for disclosures of information to interested federal, state, or local authorities. *Ibid.*

The Regulations in the EEOC Compliance Manual which set forth the agency's prelitigation disclosure program were first adopted in 1975. They hardly can be called a contemporaneous construction of Title VII.

of Title VII imposing a duty upon it to allow charging parties access to its records "for the purpose of reviewing information in the case file in connection with pending or contemplated litigation." EEOC Compliance Manual § 83.3 (a). I do not find it necessary to resolve the disagreement between the Commission and respondent over whether the Commission's prelitigation disclosure rules are a help or a hindrance to the effective enforcement of Title VII. I simply find no provision of the statute authorizing the Commission to assist charging parties who are trying to decide whether to file a suit.

The Court of Appeals held that the prelitigation disclosure rules are invalid. I would affirm that part of its judgment.

JUSTICE STEVENS, dissenting.

The Court construes a prohibition against public disclosure as an authorization for prelitigation discovery. A principal basis for the Court's unusual construction of rather plain statutory language is that because a charging party must know the contents of a charge, that party cannot be a member of the public to which disclosure is prohibited. In my view, the reason that the statute is not violated by the charging party's knowledge of the contents of a charge is that he is the source of the information contained in the charge; no disclosure occurs when he reads what he has written, regardless of whether he is a member of the public.

To encourage prompt and full disclosure of relevant information to a neutral conciliator, Congress assured employees and employers alike that no public disclosure of such information would occur prior to the institution of formal proceedings. To enforce this assurance, the statute imposes criminal penalties on Commission personnel who disclose information to the public. See 42 U. S. C. § 2000e–8 (e).[1] It seems fanciful to

---

[1] A violation of the disclosure prohibition contained in § 2000e–8 (e) is a misdemeanor punishable by 1-year imprisonment and a $1,000 fine.

me to conclude that Congress intended to prohibit direct disclosure while permitting indirect disclosure. That result, however, is the consequence of the Court's view that direct disclosure may be made to a fairly large group of persons who can then pass the information along to others.[2] Although Commission rules do provide that such persons shall agree not to make disclosed information public to others, neither the statutes nor the regulations contain any sanction for the violation of that sort of agreement.[3] If Congress had regarded this group as members of some nonpublic category, I believe that Congress would have expressly prohibited them from making any public disclosure of the confidential information they receive from the Commission.[4] The Court's reading of the statute shows little respect for the drafting ability of Congress.

I therefore agree with the Court of Appeals for the Fourth Circuit that the statute should be interpreted in accordance with its plain meaning.

Accordingly, I respectfully dissent.

---

[2] The persons to whom special disclosure is permitted, as described by the Court, include parties or their attorneys, aggrieved persons in whose behalf charges have been filed, and the persons or organizations who have filed the charges in their behalf, and respondents and their attorneys. See *ante*, at 596–597.

[3] The consequences of a violation surely do not include the criminal penalties that the statute expressly authorizes when Commission personnel make public disclosure.

[4] The Commission argues that it could prevent further disclosure by seeking injunctive and compensatory relief for breach of the agreement not to disclose the information to others. Brief for Petitioner 37–38, n. 24. This remedy may ameliorate the practical consequences of the Commission's regulation, but the existence of such a remedy does not answer the question of why Congress provided no express sanction for further disclosure by this nonpublic category.