708 F.2d 920
 31 Fair Empl.Prac.Cas. 1327,
32 Empl. Prac. Dec. P 33,629
FOOD TOWN STORES, INC., Appellant,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; Eleanor Holmes
Norton, in her official capacity & as Chair of
EEOC and James H. Troy, in his official
capacity as District Director
of EEOC, Appellees.
 No. 82-1564.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 8, 1983.
Decided May 23, 1983.
Rehearing and Rehearing En Banc Denied June 28, 1983.
 
 Guy F. Driver, Jr., Winston-Salem, N.C. (David A. Irvin, Francis C. Clark, Womble, Carlyle, Sandridge & Rice, Winston-Salem, N.C., on brief), for appellant.
 Diane B. Johnston (Michael N. Martinez, Gen. Counsel (Acting), Philip B. Sklover, Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Warren Bo Duplinsky, Washington, D.C., on brief), for appellee.
 Before MURNAGHAN and ERVIN, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 This is an appeal by Food Town Stores, Inc. ("Food Town") from the United States District Court for the Middle District of North Carolina. Food Town brought this action seeking to compel the Equal Employment Opportunity Commission ("EEOC") to issue a subpoena during the investigation of a charge of employment discrimination against Food Town. The district court dismissed Food Town's complaint on the ground that it lacked subject matter jurisdiction. In the alternative, the district court granted the EEOC's motion for summary judgment, holding that the EEOC was not required to issue the subpoena. Because we conclude that the EEOC was not required to issue the subpoena, we affirm.
 
 I.
 
 2
 On July 11, 1979, Ethel Bent Walsh, then an EEOC commissioner, filed a charge against Food Town alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq. In investigating the charge, the EEOC made a number of requests for information from Food Town. Food Town refused to respond fully and wrote to Commissioner Walsh asking her to substantiate the factual basis of the charge. Walsh responded that she could not supply that substantiation. Food Town then, relying on 29 U.S.C. Sec. 161, asked the EEOC to issue a subpoena to compel the testimony of Commissioner Walsh concerning the factual basis of the charge. 29 U.S.C. Sec. 161 provides, in pertinent part:
 
 
 3
 The [EEOC] or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application.
 
 
 4
 The EEOC denied this request, relying on 29 C.F.R. Sec. 1601.16(a), which provides that:
 
 
 5
 Neither the person claiming to be aggrieved, the person filing a charge on behalf of such person nor the respondent shall have the right to demand that a subpoena be issued.
 
 
 6
 When Food Town continued to refuse to supply the information requested by the EEOC, the EEOC issued a subpoena for the information. Food Town responded by petitioning the EEOC to revoke the subpoena.
 
 
 7
 On May 23, 1980, while that petition was pending, Food Town filed this action seeking to compel the EEOC to issue a subpoena requiring Commissioner Walsh to submit to a deposition for the sole purpose of substantiating the factual basis of the EEOC's charge. Food Town alleged that Commissioner Walsh's testimony was necessary in order for Food Town to support its pending petition to revoke the EEOC's subpoena or to resist any EEOC attempt to enforce its subpoena. Food Town argued that 29 C.F.R. Sec. 1601.16(a) is invalid because it conflicts with 29 U.S.C. Sec. 161.
 
 
 8
 Food Town's petition to the EEOC to revoke the EEOC's subpoena against Food Town was denied and on April 1, 1981, the EEOC commenced subpoena enforcement proceedings against Food Town in the district court. Food Town eventually agreed to comply with the EEOC subpoena.
 
 
 9
 Food Town nevertheless continued this action seeking to compel the EEOC to issue the subpoena against Commissioner Walsh. On May 26, 1982, the district court dismissed the action for lack of subject matter jurisdiction because it found that the United States' sovereign immunity had not been waived. The district court also ruled, in the alternative, that if it did have jurisdiction, it would grant the EEOC's motion for summary judgment because 29 C.F.R. Sec. 1601.16(a) did not conflict with 29 U.S.C. Sec. 161. This appeal followed.
 
 II.
 
 10
 Food Town's first contention is that the district court erred in holding that it did not possess subject matter jurisdiction. We agree.
 
 
 11
 Food Town's claims concerning the conflict between 29 C.F.R. Sec. 1601.16(a) and 29 U.S.C. Sec. 161 and the EEOC's resulting refusal to issue the subpoena clearly present a question arising under a federal statute within the meaning of 28 U.S.C. Sec. 1331(a). Such federal question jurisdiction is not defeated by the absence of a special statutory procedure for obtaining judicial review; 29 U.S.C. Sec. 1331(a) grants jurisdiction in the district courts for "nonstatutory review" actions. See Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977).
 
 
 12
 Although this action is nominally against a federal agency and federal officers, it is in fact against the United States. See Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1052, 10 L.Ed.2d 191 (1963). The doctrine of sovereign immunity therefore applies; Food Town may proceed against the United States only if the United States has consented to the suit. United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Absent such a statutory waiver of immunity, the district court was without 28 U.S.C. Sec. 1331(a) federal question jurisdiction. Jaffee v. United States, 592 F.2d 712, 718 (3d Cir.1979), cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); Estate of Watson v. Blumenthal, 586 F.2d 925, 929 (2d Cir.1978).
 
 
 13
 In 5 U.S.C. Sec. 702, Congress has waived sovereign immunity in "nonstatutory review" cases wherein nonmonetary relief is sought. See Warin v. Director, Department of Treasury, 672 F.2d 590, 592 (6th Cir.1982); Beller v. Middendorf, 632 F.2d 788, 797 (9th Cir.1980), cert. denied, 452 U.S. 905, 101 S.Ct. 3032, 69 L.Ed.2d 405 (1981); Johnsrud v. Carter, 620 F.2d 29, 31 (3d Cir.1980). The agency action must be "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. Sec. 704. By definition, the promulgation of the questioned regulation and its enforcement (i.e., the failure to issue the subpoena) are agency actions. 5 U.S.C. Sec. 551(13). The dispute here concerns whether those actions are "final agency action[s]."
 
 
 14
 The district court held that there had been no final agency action. The district court first noted that an EEOC reasonable cause determination is not "final agency action." See Georator Corp. v. E.E.O.C., 592 F.2d 765 (4th Cir.1979). The district court then reasoned that any EEOC action leading up to that determination likewise could not be final. Since the EEOC's promulgation of the regulation and failure to issue the subpoena are actions leading up to the reasonable cause determination, the district court concluded that those actions are not final agency actions and, thus, the 5 U.S.C. Sec. 702 waiver does not apply. We reject the district court's reasoning.
 
 
 15
 The promulgation of 29 C.F.R. Sec. 1601.16(a) is a final action because that regulation is "definitive," not "informal ... or only the ruling of a subordinate official ... or tentative;" the "process of rule making was complete" and Food Town "claimed to be 'aggrieved.' " Abbott Laboratories v. Gardner, 387 U.S. 136, 151, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967) (Food and Drug Commission regulation final agency action upon promulgation) (citations omitted).[1] The failure to issue the subpoena also is a final action because it has "determinant consequences." Georator, 592 F.2d at 768. That failure denied Food Town its right, asserted under 29 U.S.C. Sec. 161, to have the subpoena issued, which denial is a "determinant consequence." See Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 589 n. 8 (D.C.Cir.1971) (test of finality "is not whether the order is the last administrative order contemplated by the statutory scheme, but rather whether it imposes an obligation or denies a right").[2]
 
 
 16
 Furthermore, there is no support for the reasoning that all EEOC actions prefatory to the nonfinal reasonable cause determination are likewise nonfinal. Since finality can occur when a party is deprived of a statutory right, as well as when liability is imposed, the focus should be on the nature of the consequence accruing from the EEOC's action, not on what stage in the proceedings the action occurred. It is illogical to immunize EEOC promulgated regulations from judicial review merely because their enforcement would be prefatory to a reasonable cause determination. This is especially so where, as here, the regulation allegedly deprives a party of a statutory right, which deprivation subsequently is not reviewable in the district court trial. Thus it cannot be that federal courts lack jurisdiction over challenges to EEOC regulations. Indeed, if such were the law, then this court could not have entertained the challenge to the EEOC disclosure regulations in E.E.O.C. v. Joseph Horne Co., 607 F.2d 1075 (4th Cir.1979), rev'd sub nom., E.E.O.C. v. Associated Dry Goods Corp., 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981).
 
 
 17
 We therefore conclude that the promulgation of 29 C.F.R. Sec. 1601.16(a) and its enforcement against Food Town are, within the meaning of 5 U.S.C. Sec. 702, final agency actions for which there is no other adequate remedy in a court. Sovereign immunity thus is waived, and the district court possessed subject matter jurisdiction over this action.[3]
 
 III.
 
 18
 Having concluded that the district court erred in dismissing the action for lack of jurisdiction, we now must turn to a review of its alternative holding granting summary judgment in the EEOC's favor on the question whether 29 C.F.R. Sec. 1601.16(a) is valid. We note at the outset that the two other courts that have considered this question have resolved it in the EEOC's favor. E.E. O.C. v. Suburban Transit System, 28 FEP 419 (N.D.Ill.1982); E.E.O.C. v. Goodyear Tire & Rubber Co., 21 FEP 1631 (N.D.Ohio 1979).
 
 
 19
 In 1972, as part of the wholesale revision to Title VII, Congress incorporated 29 U.S.C. Sec. 161, which grants investigatory powers to the National Labor Relations Board ("NLRB"), into Title VII. 42 U.S.C. Sec. 2000e-9. Among 29 U.S.C. Sec. 161's many parts is the provision that the "Board shall ... upon application of any party ..., forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses." Food Town argues that this provision grants Food Town the absolute right to a subpoena of any party, including EEOC officials, at any stage in an EEOC proceeding and that 29 C.F.R. Sec. 1601.16(a) plainly conflicts with the provision since it provides that a party does not "have the right to demand that a subpoena be issued." We cannot agree.
 
 
 20
 We are mindful that in interpreting a statute, we must not be guided by a single sentence, but rather must look to the provisions of the whole law, ascertain legislative intent, and give effect to that intent. Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). A statute must be interpreted to give it the single, most harmonious, comprehensive meaning possible in light of the legislative policy and purpose. Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 631-32, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973). Where "an absolutely literal reading of a statutory provision is irreconcilably at war with the clear congressional purpose, a less literal construction must be considered." United States v. Campos-Serrano, 404 U.S. 293, 298, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1977).
 
 
 21
 The NLRB consistently has interpreted Sec. 161 not to require the issuance of investigative subpoenas to private parties. This policy has been upheld by the courts. See Martins Ferry Hospital Ass'n v. National Labor Relations Board, 654 F.2d 455 (6th Cir.1981), cert. denied, 454 U.S. 1083, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981); Schrementi Bros. v. McCulloch, 69 LRRM 2233 (N.D.Ill.1968). The legislative history of the 1972 Title VII amendments indicates that Congress intended to incorporate the NLRB's investigative subpoena policy into Title VII.
 
 
 22
 In 1971, bills were introduced in both the Senate and House of Representatives to strengthen the role of the EEOC in enforcing Title VII. S. 2515, 92d Cong., 1st Sess. (1971); H.R. 1746, 92d Cong. 1st Sess. (1971). The bills were modeled after the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Sec. 141, et seq, and granted the EEOC procedures and powers similar to those vested in the NLRB. See Legislative History to Equal Employment Opportunity Act of 1972 at 192, 682, 692, 798, 836, 838 (1972). Thus, 29 U.S.C. Sec. 161 was incorporated into Title VII, and as indicated by the section-by-section analysis, the EEOC, like the NLRB, would not be required to issue investigative subpoenas under that section.
 
 
 23
 Under this section, the Commission would not be authorized to issue a subpoena on the application of a private party before it issues a complaint and notice of hearing. This provision, which is in accord with the actual practice of National Labor Relations Board, would give the Commission exclusive authority to conduct the prehearing investigation.
 
 
 24
 Section-by-Section Analysis of S. 2515, reprinted in Legislative History of the Equal Employment Opportunity Act of 1972 at 1977 (1972).
 
 
 25
 While opponents to the proposed amendments succeeded in deleting provisions granting the EEOC NLRB-like adversary hearing and cease and desist powers, the enacted amendments nevertheless did include the incorporation of the NLRB investigative powers contained in 29 U.S.C. Sec. 161. That incorporation was not changed from the originally proposed bill and we see no reason why the above section-by-section analysis does not reflect Congressional intent concerning EEOC investigative subpoenas.
 
 
 26
 Furthermore, in incorporating 29 U.S.C. Sec. 161, Congress did not intend that all the provisions of the section be mechanically applied to Title VII. The section-by-section analysis of both the Senate and House versions of the enacted amendments indicate that the provisions of 29 U.S.C. Sec. 161 are to be made applicable to EEOC investigations only "to the extent appropriate." Section-by-Section Analysis of H.R. 1746 and S. 2515, reprinted in, Legislative History of the Equal Employment Opportunity Act of 1972 at 1775, 1849. Congress thereby conferred discretion upon the EEOC to promulgate appropriate guidelines for the use of 29 U.S.C. Sec. 161 powers in EEOC investigations. We believe that the EEOC's investigative subpoena regulation, 29 C.F.R. Sec. 1601.16(a), is such an appropriate guideline. The regulation is consistent with congressional intent and the NLRB's long-standing interpretation of 29 U.S.C. Sec. 161. In this situation, the EEOC is entitled to great deference. Griggs v. Duke Power Co., 401 U.S. 424, 433-34, 91 S.Ct. 849, 854-855, 28 L.Ed.2d 158 (1971).
 
 
 27
 We also are persuaded by the reasoning in E.E.O.C. v. K-Mart Corp., 694 F.2d 1055 (6th Cir.1982). That case involved subpoena enforcement proceedings brought by the EEOC against K-Mart. In defending against enforcement, K-Mart, pursuant to the district court's discovery order, obtained subpoenas for the depositions of certain EEOC officials. The Sixth Circuit reversed the discovery order, reasoning that it was inconsistent with the enforcement scheme of Title VII.
 
 
 28
 Congress did not intend ... to allow extensive delay in the disposition of Title VII cases. Title VII was enacted to eliminate discrimination in employment on account of race, color, religion, sex, or national origin. The EEOC was given investigatory power to prevent and remedy discrimination in employment. Requiring the EEOC to justify each charge would divert the EEOC from its primary purpose of determining whether there has been a violation of Title VII. (citations omitted).
 
 
 29
 Id. at 1067-68. The court held that discovery is appropriate only where the private party makes a substantial showing of abuse of process, i.e., EEOC investigation for harassment or for other ulterior or improper purpose, by the EEOC, which showing K-Mart failed to make.[4] The present case, of course, does not involve an issue of the permissible scope of discovery in a subpoena enforcement proceeding. Nevertheless, the prospect of extensive delay in EEOC investigations, a risk especially inherent in private party subpoenas of EEOC officials, is a significant consideration in our decision inasmuch as we believe that 29 C.F.R. Sec. 1601.16(a) properly and necessarily shields Title VII's enforcement scheme from such extensive delay.
 
 IV.
 
 30
 For the foregoing reasons, the district court's grant of summary judgment in favor of the EEOC is
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The EEOC's attempt to distinguish Abbott Laboratories is not persuasive. The EEOC argues that the test of finality applied therein is applicable only to substantive regulations, and not to procedural regulations such as 29 C.F.R. Sec. 1601.16(a). There is no language in the case, however, that supports the proposition that finality can turn on a substantive-procedural distinction. Furthermore, that case and the present one are alike in the key aspect; both involve a definitive regulation that affected the legal right (e.g., right to have subpoena issued) of the aggrieved plaintiff
 
 
 [2]
 The EEOC claims that Food Town suffered no "determinant consequences" because it would have an opportunity to respond to any Title VII charges in the district court before liability could be imposed. "Determinant consequence", however, is not synonymous with "liability." A "determinant consequence" can occur when a party is aggrieved by the denial of a statutory right. That Food Town ultimately may not be found liable for a Title VII violation is irrelevant to the question whether Food Town was denied the statutory right. Food Town is not aggrieved by the refusal to issue the subpoena only when that refusal leads to liability; it is aggrieved simply by the refusal to issue the subpoena. Furthermore, contrary to the EEOC's suggestions, Food Town would not have an adequate remedy in a subsequent Title VII trial. That trial is de novo on the merits. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 1822, 1823, 36 L.Ed.2d 668 (1973). The EEOC regulation and failure to issue the subpoena would not be reviewable in that action. The prior administrative record is not considered in the district court and Food Town could not set forth as a defense procedural irregularities in the administrative proceedings
 
 
 [3]
 We note that Food Town did not allege jurisdiction under 28 U.S.C. Sec. 1361. That provision grants jurisdiction to the district courts over any mandamus action to compel an officer of the United States or agency thereof to perform a duty owed to the plaintiff. Because we hold that jurisdiction exists under 28 U.S.C. Sec. 1331, we do not decide whether jurisdiction also exists under 28 U.S.C. Sec. 1361
 
 
 [4]
 Food Town has made no substantial showing of abuse of process by the EEOC. Indeed, Food Town's alleged reason for the subpoena, to defend against the EEOC subpoena enforcement proceedings, was mooted when Food Town agreed to comply with the EEOC subpoena