v.

**Gary FRIDELL, an individual, Goodhue County, a Minnesota Municipal Corporation, Defendants.**

**Civil No. 3–94–1350.**

United States District Court,
D. Minnesota,
Third Division.

Oct. 18, 1995.

514

James H. Kaster, Minneapolis, MN, for plaintiff.

Lawrence R. King, Barbara Hatch, St. Paul, MN, Paul D. Peterson, Woodbury, MN, for defendant Gary Fridell.

Stephen G. Andersen, Minneapolis, MN, for defendant Goodhue County.

Mark R. Anfinson, Minneapolis, MN, for *Red Wing Republican Eagle* Newspaper.

### ORDER

MONTGOMERY, United States Magistrate Judge.

The above-entitled matter came on for hearing on September 26, 1995 before the undersigned United States Magistrate Judge pursuant to Plaintiff's Motion to Compel Compliance with Rule 45 (Doc. No. 28), and Defendant Fridell's Motion to Compel (Doc. No. 25). James H. Kaster, Esq., appeared on behalf of Plaintiff. Lawrence R. King, Barbara Hatch Esq., and Paul D. Peterson, Esq., appeared on behalf of Defendant Gary Fridell and Stephen G. Andersen, Esq., appeared on behalf of Defendant Goodhue County. Mark R. Anfinson, Esq., also appeared on behalf of the *Red Wing Republican Eagle* Newspaper.

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel Compliance with Rule 45 (Doc. No. 28) is **DENIED.** See attached memorandum.

2. Defendant's Motion to Compel Production of Medical Authorizations (Doc. No. 25) is **DENIED.** See attached memorandum.

3. Defendant's Motion to Compel Production of Records from the Department of Jobs and Training and the E.E.O.C. (Doc. No. 25) is **GRANTED.** See attached memorandum.

4. Defendant's Motion for Attorney's Fees (Doc. No. 25) is **DENIED.**

### MEMORANDUM

The background facts of this case are well known to all parties involved and were outlined in this Court's Order dated September 26, 1995. In the interest of brevity, the Court will not reiterate those facts. The pertinent facts at issue for the present Motion are as follows.

On August 3, 1994, the *Red Wing Republican Eagle,* published two front-page articles detailing the events surrounding Plaintiff's letter to Governor Carlson and Defendant Fridell's failed judicial appointment. The articles, co-written by Jim Pumarlo and Karl Puckett, relied on confidential sources. The sources had indicated to the reporters that they would not provide information unless they were promised confidentiality. *See* Affidavit of Jim Pumarlo, at p. 2.

On August 3, 1995, Plaintiff conducted depositions of Pumarlo and Puckett regarding the articles. Both reporters claimed a "reporter privilege" and refused to identify their sources or to produce their non-published notes. Consequently, on August 8, 1995 Plaintiff issued a subpoena *duces tecum* on the *Republican Eagle* requesting interview notes pertaining to Plaintiff. The *Republican Eagle* refused, and on August 30, 1995, ran a front-page story detailing the subpoena. The article quoted the newspaper's publisher: "The news article of [August 3, 1994] was developed purely with our own sources and there was no cooperation on the part of Fridell."

Plaintiff now seeks this Court to Compel Production of the reporters' notes and Defendant Fridell requests the Court to Compel the Execution of Medical Authorizations.

### DISCUSSION

1. *Motion to Compel Reporters' Notes.*

A non-party can be compelled to produce evidence regarding any matter relevant to the subject matter involved in the pending action, unless a privilege applies. Fed. R.Civ.P. 26(b)(1). The extent of a reporter's privilege is uncertain. The Supreme Court has only ruled on the issue of a reporter's privilege in the narrow context of whether reporters can be subpoenaed to testify in criminal grand jury proceedings. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The district and federal courts have since struggled to define the breadth of the reporter's privilege.

In *Branzburg,* the Supreme Court held that a journalist does not have an absolute privilege under the First Amendment to refuse to appear and testify before a grand jury regarding an investigation of a crime. *Id.* at 667, 92 S.Ct. at 2649–50. Nevertheless, Justice Powell's concurring opinion recognized that a qualified reporter's privilege may be proper in some circumstances because the news gathering process is not without some First Amendment protection. *Id.* at 707, 92 S.Ct. at 2669–70. In determining a privilege, Justice Powell advocated balancing freedom of the press against the obligation of citizens to provide testimony. *Id.* at 710, 92 S.Ct. at 2671.

Primarily as a result of Justice Powell's concurring opinion, all federal district courts but one interpret *Branzburg* as establishing a qualified privilege for journalists against compelled disclosure of information gathered in the news making process. *Shoen v. Shoen,* 5 F.3d 1289, 1292 n. 5 (9th Cir.1993) (*Shoen I*) (citing cases from each federal circuit). Federal courts are motivated to cultivate a reporter's privilege to prevent judicial intrusion into the editorial process, and to ensure the free flow of information to the public. *Id.* at 1292.

In *Cervantes v. Time, Inc.,* 464 F.2d 986 (8th Cir.1972) the Eighth Circuit indicated acceptance of a qualified reporter's privilege in lieu of *Branzburg:*

We are aware of the prior cases holding that the First Amendment does not grant

to reporters a testimonial privilege to withhold news sources. But to routinely grant motions seeking compulsory disclosure of anonymous news sources without first inquiring into the substance of a libel allegation would utterly emasculate the fundamental principles that underlay the line of cases articulating the constitutional restrictions to be engrafted upon the enforcement of State libel laws.

*Id.* at 992–93. The Eighth Circuit has not addressed the issue of a reporter's privilege in detail or in the context now before the Court.

■ The federal courts may differ to the scope of the reporter's privilege, but all have adopted a basic balancing test drawn from the pre-*Branzburg* decision in *Garland v. Torre*, 259 F.2d 545 (2d Cir.1958). *See* 23 Wright & Miller *Federal Practice and Procedure*, § 5426 at p. 789 ("A method of qualifying the privilege that has gained the support of newsmen, legal writers, statutory draftsmen, and the courts, is a balancing test derived from the *Garland* decision.") Under a balancing method, the reporter's privilege is defeated only where the information sought is:

1) critical to the maintenance or the heart of the claim;

2) highly material and relevant; and

3) is unobtainable from other sources.

*Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) (*Shoen II*) (quoting *In re Petroleum Products Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir.1982)); *see also Miller v. Transamerican Press*, 621 F.2d 721, 726 (5th Cir.1980); *PPM America, Inc. v. Marriott Corp.*, 152 F.R.D. 32, 35 (S.D.N.Y.1993).

In granting the privilege, most federal courts have assumed the privilege protects a reporter's underlying work product as well as an informant's identity. *See, e.g., von Bulow v. von Bulow*, 811 F.2d 136, 143 (2nd Cir.1987); *United States v. La Rouche Campaign*, 841 F.2d 1176, 1181 (1st Cir.1988).

■ In the present case, Plaintiff has failed to tip any balancing test in favor of compelling the production of reporter's notes. First, although Plaintiff contends the information sought is crucial to the retaliatory discharge claim, the information she seeks from the newspaper is not critical to the maintenance or the heart of Plaintiff's claim. Specifically, the primary underlying issue in this case is the sexual harassment claim, not the retaliatory discharge claim. The retaliatory discharge claim is but one of several other derivative issues predicated on the sexual harassment claim. Failure to obtain the reporter's notes will not critically harm Plaintiff's case.

Second, Plaintiff failed to demonstrate that the information sought is highly material and relevant to her claim of retaliatory discharge. The newspaper published the articles at issue approximately two months *after* Plaintiff left her employment on a leave of absence, and a few weeks after Plaintiff filed her present action against the county with the E.E.O.C. By the time the articles were published, Defendant Fridell's aborted judicial nomination was well known and Plaintiff's complaint detailing her allegations against Defendant Fridell was public record. That an individual would discuss a noteworthy case with a newspaper does not necessarily indicate a motive of retaliatory discharge. Overall, Plaintiff has not clearly and specifically demonstrated the materiality of the reporter's notes to her claim of retaliatory discharge.

Finally, Plaintiff did not establish that the information she seeks is unobtainable from other sources. Plaintiff merely submits that interviews and depositions, such as the depositions of the two reporters, failed to reveal the source for the articles. This plain assertion does not demonstrate an exhaustion of all reasonable alternative means for obtaining the information.

Plaintiff has failed to demonstrate that the reporter's notes are critical and material to her claim. Furthermore, the information Plaintiff seeks may be obtainable from other sources. In absence of a compelling need, and in light of the important policy considerations in protecting a reporter's privilege, the Court will not compel production of reporter's notes. *Shoen I; Shoen II.*

■ Plaintiff also contends that the newspaper waived the reporter's privilege by stating in an August 30, 1995 article that

Fridell was not the source for the articles. Voluntary disclosure of information covered by a privilege could constitute, but does not mandate, a waiver of the privilege. *See, e.g., Loadholtz v. Fields,* 389 F.Supp. 1299 (D.C.Fla.1975); 23 Wright & Miller *Federal Practice and Procedure,* § 5426 at p. 798.

The published statement that Fridell was not the source for the articles does not constitute a waiver. Mentioning who is not an informant is not the same as indicating who *is* the informant. The newspaper did not disclose the identity of the informant to a third party, as such, the newspaper did not waive the reporter's privilege and is not compelled to produce reporter's notes.

### 2. *Defendant's Motion to Compel Medical Authorizations and Other Documents.*

Defendant seeks to compel the execution of authorizations for the release of Plaintiff's medical, psychological, and educational records, as well as records regarding the unemployment hearing and the E.E.O.C. filing. Plaintiff previously provided signed releases for medical records from three health care facilities with the understanding that Plaintiff would receive copies of these medical records. Plaintiff agrees to provide the medical, psychological and educational records involved in the present motion but requests to obtain the records herself, and then provide to Defendant Fridell the copies of records after a decision whether or not to designate some records confidential. Furthermore, Plaintiff contends she has complied or is in the process of complying with Defendant's request.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending matter ..." Fed. R.Civ.P. 26(b)(1) 1995.

Concomitantly, Rule 34 of the Federal Rules of Civil Procedure provides in part:

Any party may serve on any other party a request to produce and permit the party making the request ... to inspect and copy, any designated documents ... which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

■ Requests for authorizations for the release of medical records can be properly ordered pursuant to Rule 34 but authorizations are not mandated. It is necessary to balance a plaintiff's right to privacy against a defendant's right to a fair trial in a suit for mental or emotional harm. *Lowe v. Philadelphia,* 101 F.R.D. 296, 298 (E.D.Pa.1983).

#### a) *Medical Authorizations.*

■ Defendant's Motion to Compel Medical Authorizations is denied. Rather, the Court orders Plaintiff to produce the remaining medical and psychological documents. Plaintiff's attorney may initially screen medical and psychological records to determine the confidential nature before producing the documents. However, if this Court should determine that records have been improperly withheld, the Court may impose sanctions.

#### b) *Department of Jobs and Training and E.E.O.C. Records.*

Minnesota Statute § 268.12(12) contemplates that the data gathered pursuant to proceedings determining the benefit rights of an individual are private data on individuals or non-public data not on individuals. However, the statute also provides that information may be disclosed to the subject of the data or by court order. Minn.Stat. § 268.12(12); § 13.02 (1994).

■ There is no privilege protecting the Department of Jobs and Training documents from discovery. Furthermore, the documents contain information related to the present litigation. The documents themselves may not ultimately be admissible at trial, but the documents may lead to admissible evidence. Accordingly, the documents are discoverable and Plaintiff must provide the Department of Jobs and Training Records to the Defendant.

#### c) *E.E.O.C. Records.*

Defendant requests the E.E.O.C. records in an effort to determine if the Plaintiff

made inconsistent statements to the E.E.O.C. from statements made during the present litigation. Plaintiff contends that the E.E.O.C. records are confidential pursuant to 29 C.F.R. § 1601.22 which reads in part: "Neither a charge, nor information obtained during the investigation of a charge of employment discrimination ... shall be made matters of public information by the Commission prior to the institution of any proceeding under ... title VII ..." 29 C.F.R. § 1601.22 (1995).

■ E.E.O.C. materials are discoverable to parties of the agency proceeding: "[T]he 'public' to whom the statute forbids disclosure of charges cannot logically include the parties to the agency proceeding." *E.E.O.C. v. Associated Dry Goods Corp.,* 449 U.S. 590, 598, 101 S.Ct. 817, 822, 66 L.Ed.2d 762 (1981); *see also J.P. Stevens and Company v. Perry,* 710 F.2d 136, 140 (4th Cir.1983). As such, the Commission has created special disclosure rules permitting the release of information in its files to respondents and their attorneys, so long as the request for the information is made in connection with contemplated litigation. *Id.* 449 U.S. at 597, 101 S.Ct. at 821–22; E.E.O.C. Compliance Manual § 83.3(a)(b). Accordingly, the Court orders Plaintiff to provide the Defendant with the documents from the E.E.O.C. filing.

d) *Other Requested Records.*

Plaintiff has agreed to produce the documents from the career counseling center of the University of Wisconsin, as such the motion to compel these records is moot. Furthermore, Plaintiff indicates she has complied with Defendant's request for tax returns. If any tax return documents were incomplete, Plaintiff will provide Defendant with a complete copy.