Nolan RICHARDSON, Jr., Plaintiff,

v.

B. Allen SUGG, President, University of Arkansas, in His Official and His Individual Capacities;  et al., Defendants.

No.  4:02CV00779–WRW.

United States District Court,
E.D. Arkansas,
Western Division.

March 24, 2004.

344

Mr. John W. Walker, Little Rock.

John T. Lavey, Lavey & Burnett, Little Rock, AR, John W. Walker, Rickey H. Hicks, Shawn Garrick Childs, John W. Walker, P.A., Little Rock, AR, Robert Peter Pressman, Attorney at Law, Lexington, MA, Allen P.

Roberts, Attorney at Law, Camden, AR, for Plaintiff.

Philip E. Kaplan, Joann C. Maxey, Kaplan, Brewer & Maxey, P.A., Little Rock, AR, T. Scott Varady, William R. Kincaid, Jeffrey A. Bell, Fred H. Harrison, University of Arkansas, Office of General Counsel, Little Rock, AR, for B. Alan Sugg, John White, J. Frank Broyles, and University of Arkansas Board of Trustees.

Kenneth R. Mourton, Shannon L. Poore, Ball & Mourton, Ltd., Fayetteville, AR, Michael R. Jones, Gilker & Jones, Mountainburg, AR, for Razorback Foundation, Inc.

Philip S. Anderson, Beth M. Deere, Williams & Anderson, Little Rock, AR, for Wally Hall.

### AMENDED ORDER

WILSON, District Judge.

I have reviewed Judge Forster's Proposed Findings and Recommended Disposition (Doc. No. 76), and movant Wally Hall's Partial Objection to Proposed Findings and Recommended Disposition (Doc. No. 79, attached as Exhibit 1). No other party has responded to the "RD."

Judge Forster's RD is an excellent review of the facts and law involved in this specific dispute (failure to appear and the reporter privilege). Accordingly, I adopt it with one minor modification, set forth immediately below.

It would have been better if Mr. Hall's lawyers had attempted to set up a conference call with me during the morning of the scheduled deposition. It is true that I was out of state, but I was available by phone much of that morning. For future reference, it is my general practice to remain available for emergency telephone conferences when I am out of the office, whether I am on personal or government business.[1] Be that as it may, it is most likely that I would have quashed the subpoena if I had been contacted, although Mr. Hall's activities after his stroke (as reported by Judge Forster's RD) would have kept the issue from being a slam

---

1. This includes the Sabbath if an ox is truly in the ditch.

dunk (just couldn't resist the sports metaphor). On the other hand, the last minute reversal of position by Plaintiff's counsel would have fallen on Mr. Hall's side of the ledger. I find, all in all, "no harm, no foul" (there I go again).

The parties are directed to forthwith set up the deposition of Mr. Hall as Judge Forster recommended.

In view of Mr. Hall's physical condition, it seems that two hours—at the most three hours—should be sufficient for the deposition. Objections could create a need for more time, but probably not in view Judge Forster's immediate availability.

I realize that feelings run high amongst lawyers[2] and parties in cases such as this, but the deposition of a person who is somewhat indisposed gives lawyers an excellent opportunity to hew strictly to the Marquis of Queensberry precepts (this is a word to the wise).

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

FORSTER, United States Magistrate Judge.

Movant Wally Hall, Sports Editor of the *Arkansas Democrat–Gazette*, has filed a motion to quash a subpoena served by the Plaintiff, Nolan Richardson, Jr., commanding Hall to appear for a deposition on Monday, March 1, 2004. See docket entry # 69. The motion has been referred to the Magistrate Judge undersigned for recommended disposition. A hearing was held on the motion on March 8, 2004.

In his First Amended Complaint (docket entry # 8), Plaintiff alleges that the Defendants terminated his employment as the head men's basketball coach of the University of Arkansas, Fayetteville, "in violation of his rights to freedom of speech and to be free of adverse employment actions based upon his race and for advocating for equal employment opportunity." Plaintiff's claims are based upon Title VII of the Civil Rights Act of 1964, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1981, 1983, and 2000e–5(f). Plaintiff seeks damages, reinstatement, and a declaration by the Court "that the defendants' actions punished the plaintiff for the exercise of his right to freedom of speech, and subjected him to racial discrimination in employment, including retaliation for opposing discriminatory limitations on his employment opportunities."

Mr. Hall first asserts that his motion to quash should be granted because he was physically unable to appear for the March 1, 2004, deposition inasmuch as he suffered a stroke on February 19, 2004.

From the exhibits, pleadings, and statements of counsel at the hearing,[1] it is concluded that Plaintiff's counsel served Wally Hall with a subpoena on Thursday, February 26, 2004, at work. The subpoena commanded him to appear at a deposition on March 1, 2004, at 4:30 p.m., the last day for depositions under the presiding judge's scheduling order. On the advice of counsel, however, Mr. Hall did not appear. Counsel for Mr. Hall filed (earlier in the day on March 1st) the motion to quash subpoena.

The facts demonstrate that Mr. Hall suffered a small cerebral vascular accident while in Cincinnati, Ohio, on February 19, 2004. He immediately contacted his Arkansas physician, Dr. Karen Pickett, and against her advice bypassed Cincinnati hospitals and returned to Little Rock by airplane. Mr. Hall then went to Baptist Hospital, where he was admitted for tests. Mr. Hall subsequently underwent an MRI and an electrocardiogram, the former revealing a small cerebral vascular accident which produced limited right-sided symptoms.

Mr. Hall's column in the *Arkansas Democrat–Gazette* appeared on February 19, 2004,

---

2. A review of some of the deposition transcripts submitted in support of motions reveal that the proceedings have not always been shot through with collegiality, and there have been "speaking objections" which should henceforth be strictly avoided.

1. Wally Hall did not appear at the hearing, and no testimony was offered at the hearing.

skipped February 20th and 21st, and then reappeared continuously until March 7, 2004. During this same period of time, Mr. Hall attended three Razorback basketball games in Fayetteville, *viz.*, February 21st versus South Carolina, February 28th versus Florida, and March 3rd versus Alabama.

In an affidavit submitted by Mr. Hall, Dr. Karen Pickett states that she has advised Mr. Hall to avoid stressful situations and opines that Mr. Hall should not attend the March 1 deposition or be deposed until she has cleared him medically. At the time of her affidavit, which was written on March 1, 2004 (the day of the intended deposition), Dr. Pickett had not seen Mr. Hall for the February 19th episode, but had reviewed the test results from other physicians and had spoken to Mr. Hall by telephone.

Counsel for Mr. Hall has represented to the Court that Mr. Hall is going to work approximately half-time and also works from home.

■ A court has discretion to quash a discovery request due to a witness' failing health, "particularly where the information is believed to be obtainable from another source." *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1147 (10th Cir.2003). The Magistrate Judge finds that the evidence Mr. Hall has presented is not sufficient to demonstrate that because of his medical condition, he was physically unable to attend the scheduled deposition or will not be able to attend a deposition in the near future. Dr. Pickett's opinion in her affidavit that Mr. Hall should not attend the deposition or be deposed until she has cleared him medically was rendered without an examination of Mr. Hall and apparently without consultation with Mr. Hall about how stressful the deposition would be on him. Furthermore, Mr. Hall has offered no testimony, by affidavit or otherwise, indicating that the deposition would be stressful for him or any more stressful than traveling to and attending Razorback basketball games. Under the circumstances, the Magistrate Judge finds that the subpoena should not be quashed based upon Mr. Hall's medical condition.

■ Mr. Hall also asserts that his motion to quash should be granted because he has a qualified reporter's privilege not to disclose information gathered during the news gathering process. At the hearing, counsel for Plaintiff indicated that he wants ask Mr. Hall about Hall's reporting of certain statements he attributed to Plaintiff and Hall's conversations and correspondence with University of Arkansas officials and "actors," including Defendant Frank Broyles.

■ "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery is reasonably calculated to lead to the discovery of admissible evidence." *Id.* Numerous federal courts have recognized that reporters have a qualified privilege in both criminal and civil cases against compelled disclosure of the identity of their confidential sources as well as information gathered by them through their news gathering activities. *Shoen v. Shoen*, 5 F.3d 1289, 1292–93 (9th Cir.1993) (civil); *In re Madden*, 151 F.3d 125, 128–29 (3rd Cir.1998) (civil); *Zerilli v. Smith*, 211 U.S.App. D.C. 116, 656 F.2d 705, 710–11 (D.C.Cir.1981) (civil); *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir.1986) (civil); *J.J.C. v. Fridell*, 165 F.R.D. 513, 515–16 (D.Minn. 1995) (civil); *Continental Cablevision, Inc. v. Storer Broadcasting Co.*, 583 F.Supp. 427, 433–34 (E.D.Mo.1984) (civil); *United States v. Burke*, 700 F.2d 70, 77 (2nd Cir.) (criminal), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3rd Cir.1980) (criminal), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). This privilege, which is premised on the First Amendment, "recognizes society's interest in protecting the free flow of information to the public." *In re Madden*, 151 F.3d at 128. It is an open question in the Eighth Circuit whether there is a qualified reporter's privilege in either civil or criminal cases. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 n. 8 (8th Cir.), *cert. denied*, 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997).

In the grand jury context, the Sixth and Ninth Circuits have refused to recognize the qualified reporter's privilege. *In re Grand Jury Proceedings,* 810 F.2d 580, 583–86 (6th Cir.1987); *In re Grand Jury Proceedings,* 5 F.3d 397, 402–403 (9th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994). Two district judges in the Eastern District of Arkansas[2] have declined to recognize the privilege in the grand jury and criminal settings absent certain circumstances. *In re Grand Jury Subpoena American Broadcasting Companies, Inc.,* 947 F.Supp. 1314, 1320 (E.D.Ark.1996) (Judge Wright holding that in the absence of an allegation by ABC that the grand jury subpoena was issued in bad faith or for purposes of harassment, that the information sought had a remote and tenuous relationship to the subject of the investigation, or that the Independent Counsel lacked a legitimate need for the information, ABC was not entitled to a journalist's privilege under the First Amendment); *United States v. Hively,* 202 F.Supp.2d 886, 892 (E.D.Ark.2002) (Judge Moody finding that "[o]n the specific facts of this case and in the absence of any showing that the information was sought in bad faith or for purposes of harassment, this Court declines to recognize any constitutional privilege concerning the nonconfidential testimony sought by the defense."). Although some courts have refused to recognize or have limited the scope of the qualified reporter's privilege in grand jury or criminal proceedings, in civil proceedings, where the public interest in effective criminal law enforcement is absent, courts have generally made the privilege readily available. *E.g. Zerilli,* 656 F.2d at 711–12; *Continental Cablevision,* 583 F.Supp. at 433–34. In civil cases, the qualified reporter's privilege shields both confidential and nonconfidential information. *Gonzales v. National Broadcasting Co.,* 194 F.3d 29, 35–36 (2nd Cir. 1999); *Shoen,* 5 F.3d at 1296–96; *Church of Scientology Int'l v. Daniels,* 992 F.2d 1329, 1335 (4th Cir.1993), *cert. denied,* 510 U.S. 869, 114 S.Ct. 195, 126 L.Ed.2d 153 (1993); *Continental Cablevision,* 583 F.Supp. at 434.

The Magistrate Judge finds that this Court should recognize, in accordance with the weight of authority, a First Amendment qualified reporter's privilege in civil cases against compelled disclosure of the identity of the reporter's confidential sources and of information, both confidential and nonconfidential, gathered by the reporter in the news gathering process.

Once the qualified reporter's privilege has been properly invoked by a *prima facie* showing that responding to the discovery or testimonial requests will impinge on First Amendment interests, the party seeking to overcome the privilege ordinarily must satisfy a three-part balancing test. *Continental Cablevision,* 583 F.Supp. at 433–36. The party seeking to override the privilege must demonstrate that the information sought is (1) critical to the maintenance or the heart of the claim, (2) highly material and relevant, and (3) not obtainable from other sources. *Fridell,* 165 F.R.D. at 516. Where the protection of confidentiality is not at stake, the privilege can be more easily overcome. *Gonzales,* 194 F.3d at 36. Where a civil litigant seeks nonconfidential information from a nonparty reporter or press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the reporter's privilege "if he can show that the materials at issue are of likely relevance to a significant issue in the case and are not reasonably obtainable from other available sources." *Id.*

The appropriate way for a reporter to respond to subpoena commanding him to appear at a deposition is to appear for the deposition and assert his privileges in response to specific questions and make at least a minimal *prime facie* showing as to why and how the privilege is being properly invoked. *See Continental Cablevision,* 583 F.Supp. at 435–38. *See also Solargen Electric Motor Car Corp. v. American Motors Corp.,* 506 F.Supp. 546, 552 (N.D.N.Y.1981) (A reporter cannot refuse to appear for a deposition, but must instead respond to the subpoena and assert whatever privilege he may properly invoke in response to particu-

---

**2.** Susan Webber Wright and James M. Moody.

lar questions.); *Silkwood v. The Kerr–McGee Corporation*, 563 F.2d 433, 437 (10th Cir. 1977) ("[A] reporter must respond to a subpoena ... [and] he must appear and testify. He may, however, claim his privileges in relationship to particular questions which probe his sources."). Where a reporter files a motion to quash a deposition subpoena based on the qualified reporter's privilege and fails to appear for the deposition, the appropriate procedure is for the court to deny the motion to quash and direct the reporter to appear for the deposition and invoke the privilege in response to specific questions. *Continental Cablevision*, 583 F.Supp. at 435–38. In *Continental Cablevision*, the district court denied the motion to quash and ordered the reporter to appear for her deposition at a mutually agreeable time, but no more than thirty days from the date of the order, and to assert the reporter's privilege in response to specific questions. The court also ordered that if either Plaintiff or Defendant sought an order compelling the reporter to respond, despite the reporter's claim of privilege, the party seeking said order shall so move within fifteen days of the deposition and file supporting memorandum and affidavits. *Id.* at 427, 438.

After being served with the subpoena commanding him to appear at the March 1, 2004, deposition, Mr. Hall filed a motion to quash asserting the qualified reporter's privilege. Mr. Hall did not appear at the scheduled deposition. Under the circumstances, the Magistrate Judge finds that Wally Hall's motion to quash based upon the qualified reporter's privilege should be denied.[3] *Continental Cablevision*, 583 F.Supp. at 435–38. Because trial is set for May 5, 2004, the Magistrate Judge recommends, in the interest of expediency, that the following procedure be utilized: First, that Wally Hall be ordered to appear for a deposition at a date and time mutually agreed upon by Mr. Hall, Plaintiff, and Defendants, but in no event

later than five (5) days after the presiding judge makes a final determination on the motion to quash; and, secondly, that the deposition be held in the Magistrate Judge's courtroom (or that of some other judicial officer), so that in the event Mr. Hall asserts the qualified reporter's privilege in response to a particular question, the judge can be summoned and determine whether Mr. Hall is shielded from answering by the privilege.

■ Finally, Mr. Hall requests that if the Court requires him to give deposition testimony, his testimony should be by written questions under Rule 31 of the Federal Rules of Civil Procedure. Ordinarily, a party is free is choose its method of discovery. However, upon a showing of good cause, the court may alter the manner or place of discovery as it deems appropriate. *Colonial Capital Co. v. General Motors Corp.*, 29 F.R.D. 514, 518 (D.Conn.1961). *See also Interlego A.G. v. Leslie–Henry Co.*, 32 F.R.D. 9, 11 (M.D.Pa.1963) (denying defendant's motion to require depositions upon written questions in lieu of oral depositions and noting that "[i]n the absence of special circumstances, the court should ordinarily allow the examining party to choose his own mode of examination."); *In re Vitamins Antitrust Litigation*, 2001 U.S. Dist. LEXIS 25069, at 12–13 (D.D.C. Dec. 21, 2001) (rejecting defendant's request that depositions proceed upon written questions instead of upon oral examination, finding that "Plaintiffs should be allowed to choose their desired method of discovery."). The Magistrate Judge finds that Mr. Hall has not shown good cause for altering plaintiff's chosen method of deposition upon oral examination and recommends that Mr. Hall's request that the deposition proceed upon written questions be denied.

THEREFORE, the Magistrate Judge recommends that Wally Hall's motion to quash be denied. The Magistrate Judge also rec-

**3.** As noted above, Plaintiff's counsel indicated at the hearing that he wants ask Mr. Hall about Hall's reporting of certain statements he attributed to Plaintiff and Hall's conversations and correspondence with the University of Arkansas officials and "actors," including Defendant Frank Broyles. While there is some question as to the relevance of these matters of inquiry, the

Magistrate Judge cannot say with any reasonable certainty that questioning Mr. Hall on these matters is not reasonably calculated to lead to the discovery of admissible evidence. In any event, the appropriate procedure is for Mr. Hall to appear and assert privilege in response to specific questions.

ommends that Wally Hall be ordered to appear for a deposition at a date and time mutually agreed upon by Mr. Hall, Plaintiff, and Defendants, but in no event later than five (5) days after the presiding judge makes a final determination on the motion to quash, and that the deposition be held in the Magistrate Judge's courtroom (or that of some other judicial officer), so that in the event Mr. Hall asserts the qualified reporter's privilege in response to a particular question, the judge can be summoned and determine whether Mr. Hall is shielded from answering by the privilege. The Magistrate Judge further recommends that Mr. Hall's request that his testimony be by written questions under Rule 31 in the event the Court requires him to give deposition testimony be denied.

Dated March 10, 2004.

